UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RUFUS TOMPKINS,

    Defendant.

_____/

Criminal Case No. 10-CR-20582
Civil Case No. 13-CV-12291

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING PETITIONER'S MOTION UNDER
28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Before the Court is Defendant Rufus Tompkins's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 35). The court has reviewed the filings and finds that oral argument will not aid in the resolution of this motion. See E. D. Mich. LR 7.1(f)(1). For the reasons that follow, the Court **DENIES** the motion.

**I.    BACKGROUND**

On May 16, 2011, Rufus Tompkins pleaded guilty to Theft of a Firearm from a Federal Firearms Licensee in violation of 18 U.S.C. § 922(u), and Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g) under a Rule 11 Plea Agreement (Doc. No. 27). The Court sentenced Tompkins to 120 months imprisonment, followed by a three-year term of supervised release (Doc. No. 31). Defendant seeks relief from his sentence on two grounds: ineffective assistance of counsel and violation of his due process rights.

The facts leading up to Tompkins's arrest are not in dispute. On or about July 9,

2010, at about 2:40 a.m., Defendant broke into Flanary's Performance Center and Guns, located in Garden City, Michigan (Doc. No. 30 at 1-2).  He took at least thirty-nine firearms, as well as ammunition, firearm magazines, and tactical equipment (Id.).  He subsequently sold the guns and ammunition on the street and ensured that the serial numbers were removed (Id. at 6).

Tompkins has a personal background plagued with criminal activity, substance abuse, and mental illness.  As he told his Probation Officer during the pre-sentence interview, Tompkins has struggled with issues related to mental illness since he was a child (Doc. No. 29 at 8).  As a child, he was raised in a foster care setting and was impoverished for much of his life (Id.).  He stole food to support himself, his siblings, and his mother (Id.).  He was also physically and sexually abused as a child (Id.).  Tompkins twice tried to commit suicide and was diagnosed with Multiple Personality Disorder (Id.).

Tompkins continued to struggle with mental illness as well as substance abuse as an adult (Id.).  He admitted to his probation officer that substance abuse was a contributing factor to his commission of the crimes in the instant case. (Id.).

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct his sentence on the ground that the sentence imposed violates the United States Constitution:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

To prevail on a motion alleging constitutional error, the moving party bears the burden of establishing "an error of constitutional magnitude which had a substantial and injurious effect or influence" on the criminal proceedings. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003). The petitioner must sustain his allegations by a preponderance of the evidence. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006).

An evidentiary hearing is not required if the record conclusively shows that the movant is not entitled to relief. 28 U.S.C. § 2255(b); Amr v. United States, 280 F. App'x 480, 485, 2008 WL 2246367 (6th Cir. June 2, 2008); Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). When the moving party's allegations are "contradicted by the record, inherently incredible, or conclusions rather than statements of fact," a hearing is not required. Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). Finally, where the judge deciding the § 2255 motion presided over the underlying criminal proceedings, the judge may rely on her own recollection of those proceedings. Blackledge v. Allison, 431 U.S. 63 (1977); Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III.  ANALYSIS

Tompkins' claim of ineffective assistance of counsel can be broken into two subcategories. First, according to Tompkins, Tompkins's mental health information that was known by his attorney should have prompted his attorney to investigate further by

means of psychiatric testing. Tompkins claims that the results of this testing could have given him a basis to seek an insanity defense or at least would have provided needed information at the time of sentencing for mitigation purposes. Second, Tompkins claims that he was denied the effective assistance of counsel because his attorney did not address Tompkins' mental issues in the presentence investigation report or in the sentencing memorandum, and therefore failed to present mitigating evidence during his sentencing hearing. He contends that his mental health issues should have been raised under either USSG § 5K2.13 (diminished mental capacity) or § 5H1.3 (mental and emotional conditions).

Tompkins also advances a claim that his due process rights were violated because he was not competent and unable to assist his attorney. Each ground is addressed below.

### A. Ineffective Assistance of Counsel

A defendant alleging ineffective assistance of counsel must satisfy the two-prong Strickland test set forth by the United States Supreme Court. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). First, a defendant must show that their counsel's performance was deficient. Id. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, the defendant must show prejudice — that the outcome of the proceeding would have been different but for the attorney's deficient performance. Id. at 694.

The right to effective assistance of counsel applies to and throughout the guilty plea process. Argersinger v. Hamlin, 407 U.S. 25, 34 (1972). "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to

effective assistance of counsel." Padilla v. Kentucky, 559 U.S. 356, 373 (2010). Clarifying the Strickland prejudice requirement in the context of a guilty plea, the Supreme Court explained, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Smith v. United States, 348 F.3d 545, 551 (6th Cir. 2003).

### 1. Failure to Investigate

Tompkins claims that his attorney knew of Defendant's mental health issues yet failed to investigate or challenge the issue of competence and failed to investigate Defendant's mental illness by ordering a psychiatric evaluation. Had his attorney done so, Tompkins alleges, Tompkins would have insisted on going to trial on an insanity or temporary insanity defense.

Federal law requires that defense counsel conduct a reasonable investigation of the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. Strickland, 466 U.S. at 691. But a decision not to investigate a particular defense or argument may not in itself constitute ineffective assistance. Id. ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). The duty to investigate includes the duty to conduct an investigation of a defendant's background. See Porter v. McCollum, 558 U.S. 30, 39 (2009) (citing Williams v. Taylor, 529 U.S. 362, 396 (2000)).

Tompkins claims that he gave his attorney information that should have

prompted further investigation into competence or an insanity defense. Defendant alleges in his motion that he told his attorney that he was mentally ill and that this had a great deal to do with the crime he committed (Doc. No. 35 at 4). He also claims that the Michigan Department of Corrections (MDOC) has records indicating that during his prior incarceration, he received mental health treatment at an inpatient mental health facility for six or seven months, and placed on psychotropic medications (Doc. No. 35 at 12). But despite Tompkins's assertions, in his presentence interview, at which his attorney was present, Tompkins denied receiving mental health treatment in the past and only admitted to seeking assistance from chaplains while previously incarcerated with the MDOC (See PSR #78, at 16).

Although there is not much in the record pointing to any proof of Defendant's mental health issues, aside from Defendant's assertions of insanity in his motion and reply, a review of the sentencing hearing transcript shows that Tompkins's attorney as well as the Court were well aware of his mental health issues (Doc. No. 42 at 6-7, 9). Giving Tompkins's attorney his due deference under Strickland, it is not unreasonable that his attorney opted not to investigate further and pursue an insanity defense. The transcripts demonstrate that Tompkins was articulate and quite competent in both the sentencing hearing and the guilty plea hearing (Doc. No. 41, Doc. No. 42). When considering the 3553(a) factors at sentencing, the Court noted that Tompkins was articulate about what he wanted the court to consider during sentencing (Doc. No. 42 at 10). Further, Tompkins did not raise any competency issues during his plea or at his sentencing hearing.

In addition, the facts surrounding the crime to which Tompkins pleaded guilty

show that Tompkins had the ability to plan, organize, and carry out a rather sophisticated burglary of a gun shop.  He made a tactical decision to carry it out in the early morning hours to avoid detection.  He recruited enough resources to be able to steal thirty-nine firearms as well as ammunition and tactical gear.  Tompkins had the acumen to sell these items to various individuals on the street for a profit.  Further, he had the foresight to ensure that the serial numbers were removed so as to avoid detection by the authorities.  These circumstances do not point to the work of an individual who is unable to appreciate the criminal nature of his conduct or to conform his conduct to the boundaries of the law.  Consequently, it was reasonable for Defendant's attorney to conclude that pursuing an insanity defense was not the best option in this case.

Therefore, Tompkins is unable to prove that his attorney's performance was deficient.  Tompkins may in fact be suffering from mental illness and mental health troubles, and his sentence arranged for mental health treatment during incarceration. But given the fact that his allegations of insanity at the time of the crime are in the record for the first time on this motion, and there is no other evidence to substantiate them, the Court finds that his attorney's actions were reasonable.

### 2.     Failure to Present Mitigating Evidence

Tompkins also argues that his attorney should have presented mitigating evidence during sentencing, and that his attorney's failure to do so resulted in a longer sentence than otherwise would have been received.

The United States Sentencing Guidelines provide for sentencing mitigation due to mental issues.  A defendant's mental and emotional conditions "may be relevant in

determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S. Sentencing Guidelines Manual § 5H1.3 (2012). The standards for considering a downward departure due to diminished capacity are set out in section 5K2.13, which states, "A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13 (2012). Application note 1 defines "significantly reduced mental capacity" as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. n.1 (2012).

In a failure to mitigate claim, the inquiry is whether the investigation supporting counsel's decision not to introduce mitigating evidence of a defendant's background is itself reasonable. Wiggins v. Smith, 539 U.S. 510, 522-23 (2003) (citation omitted). Reasonableness of the attorney's investigation is an objective determination of whether the investigation was reasonable given the prevailing professional norms, and the context of the investigation as seen from counsel's perspective at the time. Id. (citing Strickland, 466 U.S. at 688-89).

The record indicates that during sentencing, the Court considered Tompkins's mental health history and made a downward departure from the sentencing guidelines because of this mitigating evidence. Sentencing Tr. Doc. 42 at 11. The Court noted that Defendant needs psychotropic medication and specifically mentioned on the record

8

that Tompkins's mental health history was a mitigating factor. Id. In addition to considering those issues as a mitigating factor, the Court ordered for Tompkins to receive mental health treatment while in prison.

Further, the Court actually did engage in a downward departure from the sentencing guidelines. As calculated in the PSR, his sentencing guidelines were 151 to 188 months. The statutory maximum for each charge for which he was sentenced was 120 months, but a sentence above that and within the calculated sentencing guidelines could have been arranged under the law by having Tompkins serve consecutive rather than concurrent sentences.

But the Court took the mitigating factor of mental illness into consideration and followed the recommendation of the PSI, which was 120 months on each count to be served concurrently rather than consecutively. This amounts to a downward departure of thirty-one months, or nearly three years. Tompkins's argument that his attorney should have presented mitigating evidence of mental health issues to the Court fails in light of the record, which demonstrates that the Court considered such mitigating evidence and actually mitigated his sentence into a downward departure from the guidelines.

There is no basis for finding that Tompkins's attorney should have investigated further so as to convince the Court to lower the sentence beyond the already-reduced sentence of 120 months. Given the facts of the case, the attorney's level of investigation was reasonable. Given the detailed nature of the crime and the lack of any evidence that Tompkins's mental health issues were to the point of a "significantly reduced mental capacity," his attorney's decision not to investigate the mental illness

issue was reasonable.

Because the Court took the mitigating evidence of Tompkins's mental health issues into account and actually mitigated his sentence, and because there is no evidence presented now or in the prior record that his attorney should have investigated further, Tompkins does not sustain his burden of proving that his attorney's conduct was deficient or prejudicial to his sentence.

### B.     Due Process

Petitioner next argues that his due process rights were violated because he was not competent when consulting with his lawyer, was not competent enough to give his attorney adequate information about his case, and did not understand the sentencing process.

Forcing an incompetent person to stand trial is a violation of due process, and the right to be competent while undergoing a criminal trial is a fundamental right. See Cooper v. Oklahoma, 517 U.S. 348 (1996) (citations omitted).  This fundamental right extends to the guilty plea process as well, and the standard of competence is the same for standing trial as it is for pleading guilty.  Godinez v. Moran, 509 U.S. 389, 398 (1993).  The test for competence is that a defendant must have a sufficient present ability to consult with and reasonably understand his lawyer, and that a defendant must have a reasonable degree of rational and factual understanding of the proceedings against him.  Cooper, 517 U.S. at 354 (citing Dusky v. United States, 362 U.S. 402, 402 (1960)); see also United States v. Ford, 184 F.3d 566, 580 (6th Cir. 1999) (citing Dusky as the standard for competence).

When Tompkins entered his guilty plea, he was asked questions concerning his competence (Doc. No. 41 at 4). He was asked whether he was on medications or any kind of drugs, and Tompkins responded that he took medication for arthritis, but that it did not interfere with his ability to understand the proceedings (Id.). Tompkins twice informed the Court that he reviewed the entire matter with his attorney (Id. at 5, 8). Tompkins stated that he was happy with his representation (Id. at 4), and thankful for the opportunity to plead guilty (Id. at 11). Further, at the sentencing hearing, Defendant did not raise any concerns about his competency or contend that his lack of competency was a mitigating factor (Doc. No. 42). Defendant noted that he needed to work on his criminal conduct and mental health issues, and apologized for his criminal conduct and the negative effects it had on the direct victim of his crime (Id. at 4). He also asked the Court to consider rehabilitative treatment during his incarceration (Id. at 5). He expressed a desire to no longer engage in criminal conduct and be able to provide for his family (Id. at 5-6). He also thanked the Court for hearing his concerns and for the opportunity to plead guilty, he thanked the prosecutor for prosecuting the case, and he thanked his attorney for his defense work on his behalf (Id. at 5-6). The Court noted that Defendant was articulate and his speech asking the Court to consider his mental health was well-stated. (Id. at 10).

Based on the facts that Tompkins stated twice that he reviewed the matter with his attorney, he expressed remorse for the crime he committed and its impact on the victim, he thanked the Court for its time, the prosecutor for prosecuting the case, and his attorney for representing him, there is no way to conclude that Tompkins was unable to consult with his lawyer or did not have an understanding of the proceedings

against him. Any claim of incompetence to stand trial is unfounded, and Tompkins's due process rights were not violated.

## IV. CONCLUSION

For the reasons discussed, the motion is **DENIED**. Further, the Court dismisses as moot, Plaintiff's request for appointment of counsel and extension of time.

**IT IS SO ORDERED**.

    s/Marianne O. Battani
    MARIANNE O. BATTANI
    UNITED STATES DISTRICT JUDGE

DATED: <u>October 22, 2013</u>


## CERTIFICATE OF SERVICE

Copies of this Order were mailed to Petitioner and counsel of record on this date by ordinary mail and/or electronic filing.

    s/Bernadette M. Thebolt

    Case Manager